1 | Rosemary M. Rivas (State Bar No. 209147)
2 | rrivas@finkelsteinthompson.com
    Mark Punzalan (State Bar No. 247599)
3 | mpunzalan@finkelsteinthompson.com
    **FINKELSTEIN THOMPSON LLP**
4 | 100 Bush Street, Suite 1450
    San Francisco, California 94104
5 | Telephone: (415) 398-8700
    Facsimile: (415) 398-8704
6 |
7 | Donald J. Enright
    denright@finkelsteinthompson.com
8 | **FINKELSTEIN THOMPSON LLP**
    1050 30th Street, NW
9 | Washington, D.C. 20007
    Telephone: (202) 337-8000
10| Facsimile: (202) 337-8090

11| Proposed Lead Counsel for the Class and Attorneys for Randy Schindler

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID APPLESTEIN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MEDIVATION, INC.; DAVID T. HUNG; C. PATRICK MACHADO; LYNN SEELY; and ROHAN PALEKAR,<br><br>Defendants. | Case No. 10-CV-0998-MHP<br><br>**NOTICE OF MOTION AND MOTION FOR CONSOLIDATION, APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: June 14, 2010<br>Time: 2:00 p.m.<br>Courtroom 15 |

1

RANDY SCHINDLER'S MOTION FOR LEAD PLAINTIFF

**NOTICE OF MOTION AND MOTION**

TO: ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE, that on June 14, 2010, at 2:00 p.m., or as soon as counsel may be heard, the undersigned will move this Court before the Honorable Marilyn H. Patel, at the United States District Court for the Northern District of California, 450 Golden Gate Ave., San Francisco, CA 94102, pursuant to Rule 42 of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, for an Order:

1. consolidating with the above-captioned action any and all cases filed in this District which allege one or more common questions of law or fact;
2. appointing Randy Schindler as Lead Plaintiff on behalf of the Class;
3. approving Mr. Schindler's choice of Finkelstein Thompson LLP as Lead Counsel for the Class; and
4. granting such other and further relief as the Court may deem just and proper.

Mr. Schindler respectfully submits the following memorandum in support of his motion for: (a) consolidation of any and all cases filed in this District which allege one or more common questions of law or fact (the "Related Actions") with the above-captioned action; (b) appointment of Mr. Schindler as Lead Plaintiff, and (c) approval of Finkelstein Thompson LLP as Lead Counsel.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   PRELIMINARY STATEMENT**

Currently, there are two securities class actions pending in this District against Medivation, Inc. ("Medivation" or the "Defendants"): *Applestein v. Medivation, Inc. et al.*, Case No. 10cv00998; and *Shabanov v. Medivation, Inc. et al.*, Case No. 10cv01049. Both cases involve common questions of law and fact, and allege claims on behalf of a class of purchasers of Medivation securities between July 17, 2008 and March 2, 2010 (the "Class Period").

The first notice of pendency of class action was published pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA") in a national, business-oriented wire

service on March 9, 2010 (*See* accompanying Declaration of Rosemary Rivas (the Rivas Decl."), Exhibit B). This motion is being filed within 60 days from the publication date of that notice.

Pursuant to the PSLRA, the Court shall appoint as Lead Plaintiff the movant that has demonstrated the "largest financial interest" in the litigation and has satisfied the typicality and adequacy prongs of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). As set forth in Mr. Schindler's Certification (Rivas Decl., Ex. A), Mr. Schindler continued to hold 34,000 shares of Medivation stock through March 3, 2010, when the corrective disclosure was revealed. As such, Mr. Schindler has demonstrated that he has suffered cognizable losses of at least $806,258.

In addition to having the largest financial stake in the litigation, Mr. Schindler preliminarily satisfies each of the requirements of the PSLRA and Rule 23. He satisfies the typicality and adequacy elements of a Rule 23 inquiry, and is not subject to any unique claims or defenses. As such, Mr. Schindler is the presumptive "most adequate plaintiff" and should be appointed as Lead Plaintiff to prosecute this action on behalf of the proposed Class.

Accordingly, Mr. Schindler respectfully requests that the Court consolidate the Related Actions, appoint Mr. Schindler as the Lead Plaintiff, and approve Mr. Schindler's selection of Finkelstein Thompson as Lead Counsel. Finkelstein Thompson has extensive experience in securities litigation and has recovered billions of dollars on behalf of aggrieved shareholders and consumers in class actions nationwide. *See* Rivas Decl., Ex. D.

## II. FACTUAL BACKGROUND

Medivation is a biopharmaceutical company engaged in the rapid development of novel small molecule drugs to treat serious diseases. The Company's product candidates in clinical development include Dimebon, which Medivation touted as a treatment for Alzheimer's disease and Huntington disease.

On July 17, 2008, Medivation issued a press release entitled "MEDIVATION ANNOUNCES PUBLICATION IN *THE LANCET* OF DIMEBON PIVOTAL TRIAL RESULTS IN ALZHEIMER'S DISEASE." In the press release, the Company reported that

1  Dimebon had shown favorable results as a treatment for Alzheimers in a preliminary study. As
2  the Company stated in pertinent part:

> After both six months and a full year of treatment, Dimebon-treated patients were significantly better than placebo-treated patients on all key aspects of the disease. The benefit on the primary endpoint, the Alzheimer's Disease Assessment Scale-cognitive subscale (ADAS-cog) at six months, was highly significant ($p<0.0001$). Patients treated with Dimebon were also significantly improved at six months over baseline on all measures ($p=0.005$ on ADAS-cog). Dimebon's benefit over placebo continued to increase throughout the 12-month treatment period. At the end of 12 months, Dimebon-treated patients preserved their starting level of function on each measure of Alzheimer's disease.

Defendant Hung also stated in the press release the following:

> We are pleased to see our first pivotal trial culminate with publication of its significant findings in such a prestigious journal... Currently available therapies treat the symptoms of Alzheimer's disease with only modest effect. The Dimebon study is the first study in which a drug has achieved statistically significant benefits of this breadth, size and duration in a one year, well-controlled trial. These data, coupled with our recently announced positive results in Huntington's disease, suggest that Dimebon could be a novel therapy for the treatment of neurodegenerative diseases. We look forward to the completion of our confirmatory pivotal Phase 3 study of Dimebon in Alzheimer's disease.

On July 30, 2008, Medivation issued a press release entitled "MEDIVATION PRESENTS POSITIVE NEW DATA ON DIMEBON'S LONG-TERM EFFICACY AND NOVEL MECHANISM OF ACTION AT THE INTERNATIONAL CONFERENCE ON ALZHEIMER'S DISEASE." In the press release, the Company continued to tout Dimebon's efficacy and "novel mechanism of action" in combating Alzheimer's disease. The Company repeated similar statements touting the efficacy of Dimebon in its SEC filings throughout 2008 and 2009.

Each of these statements was materially false and misleading when issued because they misrepresented and failed to disclose material adverse facts regarding Dimebon's effectiveness in treating Alzheimer's. On March 3, 2010, Defendants were forced to reveal the truth regarding Dimebon when the drug failed to meet its co-primary or secondary efficacy endpoints compared to a placebo in a significant clinical trial. On the same day, an article in *Forbes.com* revealed

that "there were signs all along that [Dimebon] wasn't all it was made out to be." The article stated that a leading Alzheimer's doctor found that there was nothing in the structure of Dimebon to indicate that it would have a significant effect on treating Alzheimer's disease. Additionally, the doctor noted that "Medivation and its allies positioned Dimebon as the next big thing in Alzheimer' disease without good evidence to support this."

In response, the price of Medivation stock plummeted, falling from $40.25 on March 2, 2010 to $13.10 per share on March 3, 2010, on extremely heavy trading volume.

### III. ARGUMENT

#### A. The Related Actions Should Be Consolidated

The two actions identified above allege one or more common questions of law or fact and allege securities claims against Medivation and certain officers. Both actions allege that Medivation misrepresented and omitted material adverse facts regarding Dimebon's effectiveness in treating Alzheimer's disease. Thus, they should be consolidated pursuant to Rule 42 of the Federal Rules of Civil Procedure ("If actions before the court involve a common question of law or fact, the court may… consolidate the actions). Fed. R. Civ. P. 42(a).

#### B. Randy Schindler Is The Most Adequate Plaintiff Under The PSLRA

The PSLRA sets forth a detailed procedure for the selection of a Lead Plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3). First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice informing class members of their right to file a motion for appointment as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Here, Plaintiff in the first-filed action published a notice on *Business Wire* on March 9, 2010. *See* Rivas Decl., Exh. B. This notice indicated that applications for appointment as Lead Plaintiff were to be made within 60 days and that any member of the proposed class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in this action. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

According to the PSLRA, within 90 days after publication of the initial Notice of Pendency, the Court shall appoint as Lead Plaintiff the movant that the Court determines to be

most capable of adequately representing the interests of the class members. 15 U.S.C. § 78u-4(a)(3)(B)(i). In determining the "most adequate plaintiff," the Exchange Act provides that:

> the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—
>
> **(aa)** has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> **(bb)** in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> **(cc)** otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

Here, Mr. Schindler timely moves this Court to be appointed Lead Plaintiff on behalf of Class members pursuant to the provisions of the PSLRA and within the requisite time frame after publication of notice.

### 1. Mr. Schindler Has the Largest Financial Interest

Pursuant to 15 § U.S.C. § 78u-4(a)(3)(B)(iii), the class member movant with the largest financial interest in the relief sought by the action is the presumptive "most adequate plaintiff". *Eichenholtz v. Verifone Holdings, Inc.*, No. 07-06140 MHP, 2008 WL 3925289, at *1 (N.D. Cal. Aug. 22, 2008) ("*Verifone*"). In the wake of *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336 (2005), this Court calculates a movant's financial interest under a "retained share methodology," which primarily looks to shares bought during the class period that are retained at the end of the class period. *See Verifone*, 2008 WL 3925289, at *3. *See also In re Cornerstone Propane Partners, L.P. Sec. Litig.,* No. C 03-2522 MHP, 2006 WL 1180267, at *8-*9 (N.D. Cal. May 3, 2006). In circumstances like these, the Court calculates the purchase price according to the shares purchased most recently, but within the class period. *See Verifone*, 2008 WL 3925289, at *4. As set forth in the Rivas Decl., Ex. C, such a calculation shows that Mr. Schindler held 34,000 shares at the close of the Class Period, and has established losses of $806,258, which represents the largest known financial interest in the relief sought by the Class. *See id*.

### 2. Mr. Schindler Satisfies The Requirements of Rule 23 of the Federal Rules of Civil Procedure

Under 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as Lead Plaintiff, the Court need only examine the typicality and adequacy prongs of Rule 23(a). *See In re Cavanaugh,* 306 F.3d 726, 730 (9th Cir. 2002).

Here, Mr. Schindler satisfies both the typicality and adequacy requirements of Rule 23. Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. Typicality exists if claims are "reasonably co-extensive with those of absent class members." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The claims of the Lead Plaintiff, however, need not be identical to the claims of the class to satisfy typicality. *Id.*

Here, Mr. Schindler seeks to represent a class of purchasers of Medivation securities who have identical, non-competing and non-conflicting interests. Mr. Schindler satisfies the typicality requirement because, just like all other class members, he (1) purchased common stock of Medivation during the Class Period; (2) at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) suffered damages thereby. Thus, Mr. Schindler's claims are typical of those of other class members since his claims and the claims of other class members arise out of the same course of events and are reasonably coextensive.

1  Mr. Schindler also satisfies the "adequacy" prong of Rule 23. Under Rule 23(a)(4), the
2  representative party must "fairly and adequately protect the interests of the class." As detailed
3  above, Mr. Schindler shares common questions of law and fact with the members of the Class
4  and his claims are typical of the claims of other class members. Furthermore, Mr. Schindler has
5  already taken significant steps demonstrating that he has and will protect the interests of the
6  Class: he has executed a sworn certification detailing his Class Period transactions and
7  expressing his willingness to serve as Lead Plaintiff; he has timely moved to be appointed Lead
8  Plaintiff in this action; and he has retained competent and experienced counsel who, as shown
9  below, will be able to conduct this complex litigation in a professional manner. Further, Mr.
10 Schindler has the largest known financial interest, and the expectation is that the person or group
11 with the largest amounts at stake "presumably meets the adequacy requirement." *See*
12 *Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at *5 (N.D. Cal. Apr. 16,
13 2007). Thus, Mr. Schindler, in addition to having the largest financial interest, also *prima facie*
14 satisfies the typicality Rule 23(a)(3) and adequacy 23(a)(4) requirements of Rule 23 of the
15 Federal Rules of Civil Procedure, and therefore, satisfies all elements of the Exchange Act's
16 prerequisites for appointment as Lead Plaintiff.

      **C.  The Court Should Approve Mr. Schindler's Choice Of Counsel**

Pursuant to Section 21D(a)(3)(B)(v) of the Exchange Act, codified as 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lead Plaintiff is to select and retain lead counsel to represent the Class, subject to Court approval. Here, Mr. Schindler has selected and retained Finkelstein Thompson LLP to serve as Lead Counsel for the Class. Finkelstein Thompson LLP has served as lead counsel in dozens of shareholder class actions, and has successfully litigated numerous securities fraud claims in this Court and around the nation. *See* Finkelstein Thompson LLP Firm Resume, filed herewith as Ex. D to the Rivas Declaration. Finkelstein Thompson's clients include institutional investors, high-net worth individuals, and retail investors, and the firm enjoys a national reputation for high-quality work and successful recoveries for its clients. *See* Rivas Decl., Exh. D. Accordingly, this Court should approve Mr. Schindler's selection of Lead Counsel and Local Counsel.

8
RANDY SCHINDLER'S MOTION FOR LEAD PLAINTIFF

## CONCLUSION

Mr. Schindler and his counsel, Finkelstein Thompson LLP, will fairly and adequately represent the Class. There is nothing to suggest that Mr. Schindler is subject to unique defenses, which are the only pieces of evidence that can rebut the presumption of adequacy under the Exchange Act. For the foregoing reasons, Mr. Schindler respectfully requests that this Court: (i) consolidate the Related Actions with the above-captioned action; (b) appoint Mr. Schindler as Lead Plaintiff, and (c) approve Finkelstein Thompson LLP as Lead Counsel.

Dated: May 10, 2010                    Respectfully submitted,

**FINKELSTEIN THOMPSON LLP**

/s/ Rosemary M. Rivas
Rosemary M. Rivas

Mark Punzalan
100 Bush St., Suite 1450
San Francisco, California 94104
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

Donald J. Enright
denright@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
1050 30th Street, NW
Washington, D.C. 20007
Telephone: (202) 337-8000
Facsimile: (202) 337-8090