UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID APPLESTEIN, et al.

        Plaintiffs,

  v.

MEDIVATION INC, et al.,

        Defendant.
                                   /

No. C 10-00998 MHP

**MEMORANDUM & ORDER**

**Re: Appointment of Lead Plaintiff and Lead Counsel**

     Presently pending before this court are two securities fraud class action lawsuits, the above-captioned action and *Slotkin v. Medivation, Inc.*, C 10-02005 (N.D. Cal.), filed against Medivation, a biopharmaceutical company, and certain of its officers and directors (collectively "defendants"), on behalf of individuals who purchased Medivation securities between July 17, 2008 and March 2, 2010. Both actions allege violations of various federal securities laws. Now before the court are various plaintiffs' applications for appointment as lead plaintiff and for their attorneys as lead counsel. Having considered the parties' arguments and submissions and for the reasons discussed below, the court enters the following memorandum and order.

BACKGROUND

     The two actions at issue relate to Medivation's failed development of the drug Dimebon for the treatment of Alzheimer's disease. During the class period, plaintiffs allege that defendants disseminated false and misleading statements touting the effectiveness of Dimebon as a treatment for Alzheimer's. When Dimebon failed to meet its primary or secondary goals in a phase III clinical trial, however, defendants were forced to publically disclose its ineffectiveness, which they did on March 3, 2010 before the market opened. As a result of this disclosure, Medivation's stock fell from $27.15 per share on March 2, 2010 to $13.10 on March 3, 2010.

## LEGAL STANDARD

The Private Securities Litigation Reform Act of 1995 ("PSLRA") sets forth a three-tiered procedure for the selection of a lead plaintiff to oversee securities class actions. 15 U.S.C. § 78u-4(a)(3); *In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002). First, the plaintiff who files the initial action must, within twenty days of filing the action, publish a notice to the class informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(I). Within sixty days after publication of the required notice, any member of the proposed class may apply to the court to be appointed lead plaintiff, whether or not they have previously filed a complaint. *Id.* § 78u-4(a)(3)(A)(i)(II). Next, the court appoints as lead plaintiff the movant or movants that the court determines to be most capable of adequately representing the interests of class members. *Id.* § 78u-4(a)(3)(B)(i). The statute creates a rebuttable presumption that the most adequate plaintiff:

> (aa) has either filed the complaint or made a motion in response to a notice under [the PSLRA];
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I). For purposes of appointing lead plaintiff, the focus is only on the typicality and adequacy prongs of Rule 23. See *Cavanaugh*, 306 F.3d at 730. Only by a showing that a presumptive lead plaintiff will not fairly and adequately represent the class, or is subject to unique defenses that will render such plaintiff incapable of adequately representing the class, will the presumption be overcome. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

## DISCUSSION

### I.     Consolidation

All of the parties have moved and agreed to consolidate the two actions. There is no dispute that the two actions involve the exact same alleged misrepresentations that Medivation made to the

2

market. Accordingly, the court orders that *Applestein v. Medivation*, C 10-00998, and *Slotkin v. Medivation, Inc.*, C 10-02005, are hereby consolidated.

II..     Appointment of Lead Counsel

There are five individuals/entities seeking to be appointed lead plaintiff in this action: (1) Hopson Family Investments, Inc. ("Hopson"), (2) Mark Slotkin ("Slotkin"), (3) Catoosa Fund, LP ("Catoosa"), (4) Michael Solomon ("Solomon"), and (5) Randy Schindler ("Schindler"). Each of the individuals/entities has filed a motion to serve as lead plaintiff, meaning that the court must proceed to the second step of the presumptive lead plaintiff analysis.

A.     Financial Interests

When calculating the greatest financial interest, the court utilizes the retained share methodology, which primarily looks to shares bought during the class period that are retained at the end of the class period. During the class certification stage in a very similar case, this court used the retained shares methodology to determine whether plaintiffs had demonstrated loss causation. *See In re Cornerstone Propane Partners, L.P. Sec. Litig.*, No. C 03-2522 MHP, 2006 WL 1180267, at *8-9 (N.D. Cal. May 3, 2006)  (Patel, J.). There, this court held that "since corrective disclosure is alleged to have occurred only from July 2001 onwards, under *Dura* there can be no loss causation for plaintiffs who purchased and sold stock at the inflated share price prior to that disclosure, and thus these plaintiffs may not recover at all." *Id.* at *8. Thus, loss causation can only be demonstrated with respect to shares retained as of the date of the corrective disclosure.

As this court described in *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 WL 3925289, at *4 (N.D. Cal. Aug. 22, 2008) (Patel, J.),

> the court calculates damages by determining the shares bought during the class period that were retained as of [end of the class period]. The amount paid for the shares retained as of [the end of the class period] are calculated according to the price paid for the shares bought most recently in time, but prior to, [the end of the class period]. The losses on the retained shares are calculated according to the following formula: if a share was not sold within 90 days subsequent to [the end of the class period], the loss is to be measured using an average of the daily closing price of Medivation stock during the 90-day period beginning [with the end of the class period]. If a share was sold within 90 days subsequent to [the end of the class period], the loss is to be measured using the higher of the actual sale price or an average of the daily closing price from [the end of the class period] to the date of sale.

3

None of the potential lead plaintiffs contest the loss estimates of Slotkin ($552,840), Catoosa ($182,408) or Hopson ($163,924)[1]. In contrast, the losses suffered by Schindler and Solomon have been challenged.

Schindler claims a loss of $806,258. Slotkin asserts that Schindler only suffered a loss of $92,896. This dispute arises out of the fact that Schindler owned approximately 30,000 shares of Medivation stock at the beginning of the class period, liquidated all of his Medivation holdings (perhaps as many as three times during the class period), and then finished the class period with 34,000 shares of Medivation stock. For reasons discussed below, the court holds that Schindler's trading patterns make him unsuitable to represent the class in this case. Because Schindler's loss amount is ultimately irrelevant, the court will attribute the larger financial interest, $806,258, to him.

At most, Solomon claims a loss of $114,670 based on trading of 3000 shares of Medivation stock purchased during and held onto through the end of the class period. However, Slotkin points out that the $114,670 figure appears not to have taken into account any of the proceeds Solomon received from selling the shares. Solomon sold the 3000 shares at a price of $10.99 per share, for a return of $32,970, meaning at most, Solomon suffered a net loss of $81,700. The court will use the $81,700 figure as the measure of Solomon's financial interest.

Accordingly, the court holds that the parties suffered losses, from greatest to least, in the following order: Schindler, Slotkin, Catoosa, Hopson, Solomon. Pursuant to the PSLRA, the court will consider the putative lead plaintiffs' suitability to lead the class in that order.

B.   Schindler

Given the financial interests discussed above, Schindler becomes the presumptive lead plaintiff. All of the plaintiffs contend that Schindler was a "day-trader," and as such, cannot be an adequate representative of the class because he will be subject to unique defenses. Day-traders "typically focus[es] on technical price movements rather than price," and therefore are subject to a defense the they would have purchased the stock at issue "regardless of the misstatement/omission." *See In re Safeguard Scientifics*, 216 F.R.D. 577, 583 (E.D. Pa. 2003); *Eichenholtz*, 2008 WL 3925289, at *10-11.

4

1 The transaction history that Schindler submitted to support his motion to be appointed lead 2 plaintiff indicates that he engaged in 407 trades of Medivation stock over a 644 day period within 3 the class period. Those records also show that the volume of his trading ranged from a single trade 4 to as many as 44 trades in a single day. On at least nine occasions during the class period, Schindler 5 bought and sold Medivation stock on the same day. In his supplemental supporting declaration, 6 Schindler asserts that the volume of trades was a product of his using E-trade, an online brokerage 7 house, as his broker; Schindler claims that E-trade would often fill a single buy or sell order through 8 multiple trades.

9 The record before the court may be insufficient to establish that Schindler was a day-trader 10 *qua* day-trader. It is sufficient, however, to raise serious concerns about his typicality and about his 11 susceptibility to the defense that he was trading in response to information other than the alleged 12 misstatements and omissions made by Medivation. Therefore, the court holds that the presumption 13 that Schindler, as the plaintiff with the greatest loss, ought to be the lead plaintiff has been rebutted.

14 C. Slotkin

15 With Schindler's disqualification as an adequate lead plaintiff, Slotkin becomes the 16 presumptive lead plaintiff. Slotkin's motion poses different, but equally insurmountable typicality 17 and adequacy problems. Slotkin did not own a single share of Medivation stock during the class 18 period. His claimed losses stem primarily from naked-put option contracts, although he also 19 invested in call options. "A put option is a contract in which one party buys the right to sell 20 particular securities at a specified price at or within a specified time to another party." *Interstate* 21 *Sec. Corp. v. Hayes Corp.*, 920 F.2d 769, 771 n.4 (11th Cir. 1991). A naked-put option is even more 22 speculative; "[i]n a *naked* option transaction . . . [the] seller of the option . . . does not own the 23 underlying stock." *Miller v. Prudential Bache Sec., Inc.*, 884 F.2d 128, 129 n.1 (4th Cir. 1989). In 24 other words, Slotkin was trading contracts for securities, not the securities themselves. Other 25 proposed lead plaintiffs have argued that Slotkin's valuation of the options would differ from a 26 purchaser of common stock's valuation of that stock. Although options traders have been found 27 suitable to lead a class in a securities class action, *see In re Scientific-Atlanta, Inc. Secs. Litig.*, 571

28

5

F. Supp. 2d 1315, 1330-31 (N.D. Ga. 2007), other courts have approved options traders as lead plaintiffs where they have purchased some common stock in addition to options, *see In re Donkenny Inc, Secs. Litigation*, 171 F.R.D. 156 (S.D.N.Y. 1997) (holding that options trader was adequate lead plaintiff where purchased options *and* common stock).  In other cases, proposed lead plaintiffs have been rejected by the court because their investments consisted solely of options.  *See Weikel v. Tower Semiconductor Ltd.*, 183 F.R.D 377, 391-92 (D.N.J. 1998); *see also Andrada v. Atherogenics, Inc.*, No. 05 Civ. 61(RJH), 2005 WL 912359 (S.D.N.Y. Apr. 19, 2005) (finding options trader atypical and inadequate for lead plaintiff purposes, and noting absence of cases "in which an option holder was deemed to be an appropriate lead plaintiff for an entire securities fraud class action").  As in *Weikel*, the nature of Slotkin's options trading and the information he used to make investment decisions could become the focus of the litigation, distracting from the central issue: did Medivation commit a fraud on the market?  Accordingly, because Slotkin traded only in options, the court holds that Slotkin should not be appointed lead counsel.

### D.  Catoosa

With Schindler and Slotkin's disqualification as adequate lead plaintiffs, Catoosa becomes the presumptive lead plaintiff.  Of all the individuals and entities seeking to be lead plaintiff, Catoosa has by far the "cleanest" transactional history with Medivation stocks.  On March 1, 2010, two days before Medivation's disclosure of the negative trial results, Catoosa purchased 7500 shares of Medivation common stock at $37.41 per share.  On March 3, after the value of the shares tumbled, Catoosa sold all 7500 shares at $12.82 per share.  Catoosa did not invest in any financial mechanism related to Medivation other than common stock.  Catoosa's principal, Robert Lawton ("Lawton"), has also submitted a sworn declaration that he, and he alone, decided to purchase the shares of Medivation for Catoosa, and that he did so based on publically available information regarding Medivation's development of Dimebon.  Admittedly, Catoosa is a hedge fund.  *See* Docket No. 86 (3d Lawson Dec.) ¶ 1.  It was formed by Lawton in 2001, and consists of four partners, including Lawton and Catoosa Fund Management, LLC. *Id.*

6

None of the objections of any of the other lead plaintiffs are sufficient, at this time, to rebut the presumption that Catoosa should serve as the lead plaintiff. Hopson, in particular, attacks Catoosa's typicality and adequacy with respect to the class it seeks to represent. Hopson claims that Catoosa is allegedly unfit to represent the class because: (1) before retaining his current representation, Lawton signed an additional PSLRA certification with another law firm; (2) Catoosa's status as a limited partnership was canceled/void earlier this year; (3) Catoosa has not provided sufficient transparency regarding its operations (specifically, its website is locked); (4) Catoosa Fund Management did not file as lead plaintiff, even though it suffered the loss; and (5) Catoosa engages in atypical trading patterns.

Catoosa has, however, persuasively answered most of these complaints. In his first declaration, Lawton sufficiently explained how he submitted a certification statement in error. Docket No. 27 (1st Lawton Dec.). Catoosa has established that it currently is an active limited partnership. Docket No. 66 (Myers Dec.), Exh. 2. Catoosa has also explained that Catoosa Fund Management is partner in Catoosa, but did not directly own the shares at issue, and therefore would need not have filed as a plaintiff in this action. Catoosa Fund, according to Lawton, was the purchaser of the stock. 3d Lawton Dec. ¶ 1.

Nonetheless, the court does harbor some concerns about Catoosa's transparency and its trading practices; at this point in the litigation it is somewhat of an unknown entity. Catoosa is a hedge fund, and some, but not all, hedge funds are known for engaging in speculative, risky and atypical investments; the lack of transparency and publically available information about Catoosa makes it impossible for the parties or the court to determine whether or not Catoosa is a typical investor. That said, none of the other competing lead plaintiffs have adduced evidence sufficient to disturb the presumption that Catoosa should serve as lead plaintiff. Accordingly, Catoosa shall inform the other competing lead plaintiffs and the court within ten (10) days whether it intends to serve as lead plaintiff in this action. If Catoosa persists, the other putative lead plaintiffs shall have sixty (60) days to conduct discovery directed solely at whether Catoosa is a suitable plaintiff to lead the class of investors in this case. That discovery may consist of deposition and/or written discovery

7

and is limited to the suitability issue. If, for whatever reason, Catoosa no longer wishes to be lead plaintiff or wishes to not submit to such discovery, Hopson will serve as lead plaintiff for the reasons discussed below.

### E. Hopson

If Catoosa were no longer in the running to be lead plaintiff, Hopson, with the fourth greatest financial interest, would become the presumptive lead plaintiff. None of the parties have raised any concerns regarding Hopson's suitability to represent the class. Although Hopson did sell some call options toward the end of the class period, Hopson made a significant investment in Medivation common stock. This investment is more than sufficient to align his interests with those of the class he seeks to represent. Therefore, if Catoosa elects not to serve as lead plaintiff, Hopson will be appointed as lead plaintiff, and his counsel, Robbins Geller Rudman & Dowd LLP will be appointed lead plaintiff's counsel.[2]

### CONCLUSION

Within ten (10) days of the date of the filing of this order, plaintiff Catoosa Fund LLP shall inform the court and the other parties to this litigation whether it wishes to serve as lead plaintiff. If Catoosa does elect to serve as lead plaintiff, the other plaintiffs to this action shall have sixty (60) days to conduct discovery related to whether Catoosa is a suitable lead plaintiff; within thirty (30) days of the expiration of that discovery period, the other competing lead plaintiffs may each submit a memorandum, not to exceed eight (8) pages, discussing how the discovery affects Catoosa's suitability as lead plaintiff.[3] If Catoosa chooses not to serve as lead plaintiff or fails to respond within ten (10 days), plaintiff Hopson Family Investments, Inc. shall be appointed lead plaintiff, and his counsel, Robbins Geller Rudman & Dowd LLP , shall be appointed lead plaintiff's counsel.

IT IS SO ORDERED.

Dated: September 17, 2010

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

8

**ENDNOTES**

1. Hopson initially stated a loss of $222,000. In later filings, Hopson clarified that its losses were only $163,924.

2. Because the court holds that Hopson is an adequate and typical lead plaintiff, the court need not determine whether Solomon, who has smaller financial interest than Hopson, would be a suitable lead plaintiff.

3. Defendants' counsel may attend the deposition, but may not participate in the examination of the deponent. They shall receive copies of the parties' written discovery and the responses, but shall not participate in the propounding of discovery.